Cheswell *v.* Chapman.

## CHESWELL *v.* CHAPMAN.

In an action for trespass *quare clausum*, and with teams, carriages and men, treading down and destroying the plaintiff's grass upon a certain day, evidence may be properly admitted of several separate and distinct acts or entries, each of which might alone technically constitute a breaking, when these several acts of trespass or entries are upon the same close, upon the same day, and in pursuance of the same general purpose.

---

Cheswell *v.* Chapman.

---

In such an action, when the defendant pleads a right of way through said close, and justifies his acts under that right, the plaintiff may traverse the alleged right of way, and at the same time newly assign for other trespasses committed *extra viam.*

One general verdict may be a sufficient finding upon several issues, when all the issues must necessarily be passed upon, in order to the finding of such verdict.

A verdict so uncertain that it can not be clearly ascertained which of two or more material issues the jury intended to find, is bad.

In an action for trespass *quare clausum,* and destroying the plaintiff's grass, &c., the defendant had pleaded a right of way, and under that right had attempted to justify his acts, and the plaintiff had traversed the right of way, and had newly assigned trespasses *extra viam.* A general verdict, that the defendant is guilty, &c., is bad.

THIS was an action of tresspass *quare clausum,* by Mary W. Cheswell against Joseph Y. Chapman, commenced before a justice of the peace, in which the plaintiff declared that the defendant, on the 24th of July, 1856, at Durham, broke and entered the plaintiff's close, situated in Durham, containing twenty acres, particularly described, and broke down and removed ten rods of the plaintiff's fence, and with carriages, teams and men, trampled and destroyed a large quantity of her grass there standing and growing, &c.

The defendant pleaded that a right of way across the plaintiff's land was assigned to one Hannah Cheswell (whose title he has), by the committee appointed by the probate court to divide the estate of one Paul Cheswell, deceased, of which the said plaintiff, and the said Hannah and the said others were heirs-at-law, in these terms: "with a privilege to pass and repass, to and from, in and around said premises, in the usual passways to the same;" that at the place where, &c., there was, at the time of said partition, a usual passway from the defendant's said land over and across the plaintiff's land, both being contiguous parcels of said Paul Cheswell's estate, in a condition to be used, and before and down to that time commonly used as a passway for men, horses, cattle and carriages,

Cheswell *v.* Chapman.

and then obviously impressed and marked, and manifest and discoverable upon the surface, over, along and by which it leads and runs; that the said defendant, at the said time when, &c., having occasion to pass and repass to and from his land, across the plaintiff's land, in said passway, took away twenty-five feet of fence, which obstructed his passing, and trod down a little grass, as he lawfully might, in keeping the said usual passway, doing no unnecessary damage; and not guilty as to the residue of the trespass.

In answer to this plea, the plaintiff filed nineteen replications, most of which concluded to the country, one denying the fact that any petition for partition was ever filed in the probate court; another denying that any committee was ever appointed; another denying that they were duly sworn; and another that they ever made report, &c.—every fact set forth in the plea being thus particularly denied, and an issue tendered upon it. One of these replications denied the existence of any right of way, as alleged in the plea, and the eighteenth and nineteenth replications newly assigned, and alleged other trespasses than those attempted to be justified by the plea, setting them forth as having been committed in other and different parts of said close, out of said supposed way in said plea mentioned, which said trespasses above newly assigned are other and different trespasses than those in said plea mentioned, &c. The defendant rejoined, joining all the issues tendered him, and as to the said several supposed trespasses, by the said plaintiff, in her eighteenth and nineteenth replications to his plea above newly assigned, he said he was not guilty, &c., which issues were joined by the plaintiff. The verdict returned by the jury was in common form, that the defendant is guilty in manner and form, as the plaintiff hath declared, &c.

The plaintiff's evidence tended to prove that the defendant was engaged in mowing and getting in the hay on

his land; that in the afternoon, being ready to haul his hay to his barn, he pulled down a part of the plaintiff's fence, to allow his passing, passed across the plaintiff's land to his own, loaded one load of hay, and drew it to his barn, and then returned, loaded a second load, and hauled that to his barn. It was objected that no evidence was admissible to show the hauling of the second load, there being only one trespass alleged in the declaration; but the evidence was admitted, subject to exception.

The court instructed the jury, that to maintain the issue upon the right of way, it was necessary for the defendant to prove, that, at the time of the partition being made, there was, at the place where he passed across the plaintiff's land, a usual passway—that is, a track, or path, impressed and marked on the ground, or otherwise discoverable on the surface, commonly used by the occupants of the farm. That such passway must extend entirely across the plaintiff's land, and though it appeared that there was such a marked passway, extending part of the way across her land, yet if it appeared that beyond a certain point, six or eight rods from the line of the defendant's land, in the easterly side of a piece of woods, where a passway or cart-path through the woods passed into an open field, there was no path or passway so marked or impressed, or otherwise discoverable on the surface of the ground, and it appeared that in going to that point from the defendant's land, each person took the most direct course, or such as he chose, to that point, and those going from the path in the woods to the defendant's land, went forward, or turned to the right or left, toward the place they wished to go to, without regard to any particular course or direction, and without following any particular path, the defendant did not acquire any right of way, or privilege of passing across that part of the land, and must fail in his claim.

There was evidence tending to show that in the years

Cheswell *v.* Chapman.

1847 and 1848, before the partition in April, 1849, and in the season of 1849, the land east of the woods was plowed entirely across where the passway was alleged to go, so that there was no passing there except over land recently plowed and under cultivation, though one witness testified that the hay was hauled from the defendant's land across the land of the plaintiff, in the season of 1848, and there was evidence tending to prove that a strip was left unplowed to allow teams to pass.

The court instructed the jury that if they found that the land was plowed entirely across the passway claimed by the defendant, it would be strong evidence that there was, at the time of the partition, no passway so marked or otherwise discoverable, as the defendant alleged, as to give him a right, under the partition, to cross the plaintiff's land there.

The jury, having found a verdict for the plaintiff, the defendant moved that it be set aside, for supposed error in said ruling and instructions, and in arrest of judgment, and the questions were transferred.

*Christie*, for the defendant.

*Small*, for the plaintiff.

SARGENT, J. We think the ruling of the court, in admitting the evidence of the drawing of the second load of hay, was correct. The defendant can not complain that, instead of two suits, or ten suits, if there had been as many loads of hay drawn, he has been charged with the whole in one suit; the breaking being treated as one, and all the damage for all the tearing down of fence and treading down of grass at all the different loads being included. We think the usual course is, where there are several distinct entries of the same close, upon the same day, for the same general purpose, which might each be

technically termed a breaking, and where the object is, as in this case, to try some question of right, to bring but one suit; counting on one breaking and entering, and claiming and proving all the damage sustained at all the several entries. No one probably ever knew a trespass charged with a *continuando*, from one hour or period in a day to some other hour or period of the same day; nor does the law favor the bringing of a multiplicity of suits, especially small ones of trifling amount, where one would as well settle all the questions of right, and the plaintiff could as well recover all his actual damage in one suit as in two or ten. And certainly the defendant can not complain of this, though, perhaps, he might have done so with some reason, had the opposite course, the one he here suggests, been pursued.

The instructions to the jury, which were objected to, were so nearly in the words of the opinion heretofore delivered in this case (38 N. H. 14), and in the words of the pleadings, that we see no reason to change them.

A *quære* might, perhaps, arise, whether, under all the circumstances of the case, the instructions to the jury, that the fact of Paul Cheswell's plowing across the alleged passway, if they should find the fact to be so, was strong evidence of the non-existence of the right, should not rather have been a direction to the jury to consider that fact in connection with others, and give it such weight as they should think it deserved. Because there might be circumstances under which a man who owns the whole of a large field, and had no person's convenience to consult but his own, might plow directly across his own path, thinking it less trouble to pass over the plowed ground a short distance to the portion of the field beyond it, than to throw out his plow at every furrow, and leave a passway in the middle of his plowed land.

Had it been plowed after the partition, then the act might have been, perhaps, considered a denial, by the

person thus plowing it, of the right of the other party to pass in this place. But before the partition, when there was no fence where the line now runs, the acts of the owner, in his own field, might not, under certain circumstances, have been very strong evidence of the non-existence of a way at this place, and, under such circumstances, the instructions may have been too favorable to the plaintiff.

The defendant, in his argument, raises the objection that these replications, one denying the right of way, as pleaded by the defendant, and the others, newly assigning trespasses *extra viam*, are bad, or, at least, improper. This exception comes too late. No such exceptions appear in the case, and it appears that these issues, thus raised, have all been joined and tried by the jury, and a verdict returned, all without objection.

But even if the objection had been made seasonably, it could not have availed the defendant. Part of the fence may have been taken down in the passway, and the defendant may be justified for doing that; and some may have been taken down out of the way, and that would not be covered by his justification; and so of the grass trodden down and destroyed, the same may be true. In such cases, where the plaintiff disputes the alleged right of way, and also affirms that the defendant has committed trespasses in other parts of his land, he should traverse the right of way, and newly assign for the trespasses *extra viam*. 1 Ch. Pl. 631; 2 Greenl. Ev. sec. 661; 2 Phill. Ev. (4 C. & H.) 199.

It is claimed that the judgment should be arrested, upon the ground that the verdict is not a sufficient finding of the issues. There is no formal defect in the verdict, and if there was, that would not be material. It is not necessary that the verdict should follow the precise language of the issue, but it must be responsive to it, and so expressed as to render it certain that the jury decided the question

Cheswell *v.* Chapman.

or questions submitted to them; and any uncertainty on this point is fatal. *Coffin* v. *Jones*, 11 Pick. 47.

That case was debt on a bond, and the defendant pleaded (1) *non est factum*, (2) *solvit ad diem*, and (3) *solvit post diem*. Issues were joined on each of these pleas, and the jury returned a verdict that the defendant is not indebted to the plaintiff in manner and form, &c. *Wilde*, J., in the opinion delivered in the case, says : "We think it does not appear, in the present case, that the jury were agreed as to any one of the issues, for they might have been divided in opinion as to each, and yet have agreed to the verdict returned. Some of the jury, for instance, might have been of the opinion that the deed had not been executed, or that it might have been improperly obtained, but that no payment had been made; while others might be satisfied with the evidence of the execution of the deed and also of the payment. If the jury were thus divided in opinion, they could not agree on either of the issues, yet they would all agree that the defendant was not indebted. It can not, therefore, be ascertained by the terms of the verdict that the jury were agreed as to any one of the issues, so that the verdict is substantially defective and uncertain ; the issues are not found directly nor by necessary implication."

These remarks are equally true in the present case, and if that verdict was not sufficient in these respects, it is difficult to see how the one in the present case can be so. For aught that now occurs to us, this verdict might be well enough upon all the first seventeen issues, if there had been no others ; for it must be presumed that the plaintiff made out all these affirmatively, in order that the defendant should be found guilty. But when the eighteenth and nineteenth issues were raised and joined, it makes it impossible to tell which issue the verdict finds ; whether it finds that the defendant had no right of way there, and was, therefore, guilty of trespasses in all the

acts he did, or whether it finds that the defendant had a right of way, as he claims, but that he was guilty of trespasses outside this way, under the new assignment. The verdict would be well enough upon either of these issues alone; but when both were joined, it became impossible to tell which issue the verdict finds, or to which it applies.

It is not certain that the jury ever agreed upon either issue. Half the jury may have found that there was no right of way belonging to the defendant, where he claimed it, that his justification failed, and that he was guilty of the whole; while the other half may have found that the right of way existed as alleged, and that so far the defendant was justified, but that he committed trespasses *extra viam*, so that the verdict is entirely uncertain. It would not be conclusive upon either issue. It does not establish the right of way, nor does it find that there is no such right. It settles nothing. And were judgment to be rendered upon it, it might be reversed upon error.

It is not a case where the court can work the verdict into form, or one where the court are competent to collect the meaning of the jury from the terms of the verdict, because it is impossible here to tell, even by argument or inference, which issue the jury intended to find, or whether they in fact agreed upon either of them. And though one verdict may be a sufficient finding upon several issues (*Porter* v. *Rummery*, 10 Mass. 66) as it might have been in this case, probably, upon the first seventeen issues, had there been no new assignment, still, as the case now stands, the verdict is not only insufficient for the two issues referred to, but is entirely uncertain as to either. For this cause, the motion in arrest of judgment must prevail.

For although a verdict which is informal, and does not find the issue in terms, will be sufficient, if a finding of the matter in issue can be concluded out of it, yet if it be so uncertain that it can not be clearly ascertained whether

the jury meant to find the issue or not, or what issue they meant to find, and when the verdict, as in this case, could not be conclusive upon either issue, it is bad. *Thompson* v. *Button*, 14 Johns. 84; *Hodges* v. *Raymond*, 9 Mass. 316; *Porter* v. *Rummery*, *ante; Jewett* v. *Davis*, 6 N. H. 518; *Stearns* v. *Barrett*, 1 Mason 170 ; *Brunswick* v. *McKean*, 4 Greenl. 508; *Coffin* v. *Jones*, 11 Pick. 47 ; *Pettes* v. *Bingham*, 10 N. H. 514 ; *Allen* v. *Aldrich*, 27 N. H. 63. ;

*A new trial granted.*